[Crim. No. 6912. Second Dist., Div. Three. Feb. 20, 1961.]

THE PEOPLE, Respondent, v. CLEMENT JOHN WILLIAM O'CONNOR, Appellant.

Bernard W. Minsky, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Joseph I. Kelly, Deputy Attorneys General, for Respondent.

SHINN, P. J.— Clement John William O'Connor was charged by information with the murder of Eugene Claudius Mariani and in a court trial he was found guilty of manslaughter. Upon his plea of not guilty by reason of insanity the court found that O'Connor was sane at the time he committed the offense. He appeals from the judgment and sentence.

Mariani was killed July 13, 1956. Upon his arraignment on August 27, 1956, O'Connor pleaded not guilty and on the People's motion the court entered a further plea of not guilty by reason of insanity; three doctors were appointed to examine appellant; they made report to the court; trial was held October 24, 1956, upon the question of appellant's present sanity; the court found that O'Connor was presently insane within the meaning of Penal Code, section 1370, suspended the criminal proceedings and ordered him committed to Atas-

cadero State Hospital until his sanity was restored; October 31, 1957, appellant was ordered returned to court; November 18th the court found him to be presently sane and able to cooperate in his defense; trial was set for December 9th; three doctors were appointed to examine appellant; December 9th, the court expressed a doubt as to O'Connor's present sanity; a jury was empanelled to try the question; December 17th the jury found him presently insane and the court made another order committing appellant to the state hospital until the restoration of his sanity; February 17, 1959, appellant was ordered returned from the hospital; the question of his present sanity was tried to the court; the court found appellant to be presently sane and able to cooperate in his defense; three other doctors were appointed to examine him; the case was set for trial and tried to the court on May 19, 1959 with the result we have previously mentioned.

There was evidence of the following facts. Appellant shot Mariani with a .22 caliber rifle as the latter was going up the steps leading to the rear door of the apartment occupied by O'Connor and his family in Santa Monica. The killing occurred at about 11 p. m. on July 13, 1956. Mariani, called "Gypsy Gene" and the "Mayor of Muscle Beach," had known O'Connor for about a year and was in love with Mrs. O'Connor. There was evidence from which the court could have inferred that appellant invited Mariani to his apartment at about 10:30 p. m. to play the ukelele or the accordion; on previous visits to the apartment Mariani had used the rear door. Officer Eckman, who was called to the scene, testified that appellant said "I finally got the son-of-a-bitch and you would have been next"; Eckman had arrested O'Connor three months previously and when taken to the police station appellant had threatened to kill the officer and Mariani. Appellant also told Eckman that "he was glad that he did it. It took him a long time of laying for him, and that he would do it many many times over again." O'Connor had complained to the city authorities about Mariani's attentions to his wife and had threatened to harm him. It appears that Mariani wrote letters and poems to Mrs. O'Connor, telephoned her, watched the apartment, followed her down the street and made threats against her husband. This conduct of Mariani was established by evidence other than the testimony of appellant and his extrajudicial admissions.

Appellant made a statement to the police which was transcribed by a stenographer and received in evidence and made

a lengthy oral statement which was recorded on tape and played to the court. In his statements to the police and in his testimony appellant said that Mariani had raped his wife on several occasions and that Mariani wanted Mrs. O'Connor to join him in a suicide pact after which they would be reincarnated as seagulls and fly up and down the beach. Appellant also told the police that he thought also that his victim was a prowler and did not recognize Mariani until he descended the stairs to look at the body. Upon the foregoing evidence the court found appellant guilty of manslaughter.

Considerable testimony was received upon the issue of appellant's sanity. Two of the court-appointed psychiatrists who examined appellant shortly before the trial gave their opinions that appellant was sane at the time he committed the offense. The court-appointed doctors who examined him in 1956 and 1957 and those who examined him while he was incarcerated in the state hospital testified directly or by way of written reports that were admitted in evidence that in their opinions appellant was insane at the time he committed the offense. Upon this evidence the court found appellant to have been sane on July 13, 1956.

Two claims of error are advanced on the appeal. The first is that the court erred in excluding evidence of appellant's mental condition during the trial on the merits; the second is that the court erred in excluding evidence of his insanity at times other than July 13, 1956, during the trial on the insanity plea. Neither contention is meritorious.

With respect to the first point, in the trial on the merits, appellant made a motion to exclude the evidence of his oral admissions to Officer Eckman and the typewritten transcript of his interrogation by the police upon the ground that, according to the reports of Drs. McNeil, McGinnis and Nielson who examined him in 1956, he was insane when he shot Mariani. The court denied the motion; appellant made no objection to the admission of his tape-recorded statements and no medical evidence was offered during the trial on the merits.

It is true that appellant was entitled to introduce evidence of his mental condition during the trial on the merits, and if the court ruled in advance, as appellant contends, that it would not consider such evidence, he was not obliged to offer reports or call any witnesses in order to preserve the point on appeal.

However, it is settled that the evidence of a defendant's mental condition which may be admitted at the trial on the merits may not consist of proof of legal insanity, but only

of evidence tending to show that he was unable to formulate the specific intent which is an element of the crime charged; in other words, evidence tending to show, as in the present case, that the offense, murder, if committed, was not murder of the first degree but murder of the second degree or manslaughter. (*People* v. *Wells,* 33 Cal.2d 330, 350-351 [202 P.2d 53].) By the judgment establishing O'Connor's guilt of manslaughter he was given the maximum benefit he could have received had the court admitted evidence of his state of mind. Appellant suggests in his brief that evidence of his mental condition would have established that he believed he was justified in killing Mariani, and, presumably, would have entitled him to an acquittal. But the claim that he was insane could not be considered in opposition to the conclusive presumption that he was sane. (Pen. Code, § 1026.)

 As to the second point, the court did not unwarrantably restrict appellant in the questioning of his expert witnesses or exclude any pertinent evidence that should have been received upon the trial of his sanity. The court properly ruled, on the People's objection and on its own initiative, that the matter to be determined was O'Connor's sanity on the night of the crime. But the witnesses were permitted to describe his mental state at the times when they examined him after July 13, 1956, as support for their opinions that he was insane at the time he committed the offense. There is no substance to the assignment of error.

The judgment (sentence) is affirmed.

Vallée, J., and Ford, J., concurred.